### AMERICAN GAS ACCUMULATOR CO. v. PREST–O–LITE CO., Inc.

(Circuit Court of Appeals, Seventh Circuit. December 11, 1925.)

No. 3559.

1. Patents ⬡⟲328—904,183, for a filling mass for receivers for storing explosive gases, held invalid.

Patent No. 904,183, for a filling mass for receivers for storing explosive gases, held invalid, under Rev. St. § 4888 (Comp. St. § 9432), because formula on which patent was issued could not be successfully used to produce such compound.

2. Patents ⬡⟲328—1,140,124, relating to storage of acetylene gas dissolved in acetone, held not infringed.

Patent No. 1,140,124, relating to storage of acetylene gas dissolved in acetone, held not infringed.

Appeal from the District Court of the United States for the District of Indiana.

Suit by the American Gas Accumulator Company against the Prest-o-Lite Company, Inc. Decree for defendant, and plaintiff appeals. Affirmed.

Hubert Howson, of New York City, for appellant.

Drury W. Cooper, of New York City, for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This appeal is from a decree dismissing appellant's patent infringement suit, brought to restrain the infringement of two patents to Gustaff Dalen. The first one, No. 904,183, issued November 17, 1908, covers a filling mass for receivers for storing explosive gases. The other, No. 1,140,124, issued May 18, 1925, covers storing mass for acetylene gas.

The invention relates to the ceramic art, which, of course, was old when Dalen entered the field. His counsel well states the problem which confronted him:

"It was discovered [by Thomas L. Willson] in 1892 that acetylene gas could be produced from calcium carbide by the introduction of the latter into water. Owing to its highly explosive qualities and characteristics, under pressure, the commercial development of this gas was slow. It could not be compressed safely into cylinders and distributed from a central point for commercial purposes and uses. In order that commercial use of the gas might be extended, it was necessary that some means be found whereby it could be transported with safety. A step * * * was taken when the important discovery was made in the late '90's that acetone at ordinary temperatures, under pressure, would dissolve large volumes of the acetylene gas; * * * that, if thus dissolved, it could be transported and handled without danger of explosion. It might be supposed that that discovery should have solved the difficulty, but it did not. The acetone, upon the dissolving and absorption of the acetylene gas, increased very substantially in volume. Conversely, when the gas was taken from its solution in acetone to be used, the volume of solution decreased, leaving above the acetone in the tank voids which would then be filled with acetylene gas under pressure. The presence of this free acetylene gas under pressure was dangerous; explosions were liable to occur."

Dalen sought, and by this patent offered, a solution of this problem. He "incorporated fibers of elastic or plastic material, such as asbestos or the like, in pasty ceramic material, in such proportion that the resulting mass was of a tough, fibrous consistency." Were he the first scientist to attack this problem, his discovery might have entitled him to such a construction of his claims as is usually accorded a pioneer. But we find that, in this interesting story of the development of this art, others (Adolph Frank, a German inventor, and A. Fouche, a French scientist) had preceded him, and pre-empted, in part, at least, the field which Dalen now seeks to monopolize. Fouche, disclosing his discoveries through a Swedish patent No. 17,117, October 26, 1901, said:

"This invention has for its purpose the production of a porous mass with small weight, the porosity of which is very large, so that the mass can absorb large quantities of acetylene at the same time that its pores are sufficiently small to prevent an explosion

from propagation through the mass. * * * When the mass is intended for receiving gaseous compressed acetylene, it is produced from cement, lime or clay, and kieselguhr, whereby the desired small weight and large porosity is obtained by addition of pulverized charcoal. When the mass is produced from lime, or cement, kieselguhr, and pulverized charcoal, the mixture is stirred out in water. On account of the large porosity and small weight of the charcoal, the whole mass can be given suitable porosity through suitable proportioning of the amount of charcoal. However, if the mass is produced from only lime or cement and pulverized charcoal, it often shows that cracks develop at the drying of the mass, which cracks usually are sufficient to propagate an explosion. In order to prevent such formation of cracks, which made the mass absolutely unusable for the intended purpose, kieselguhr is added to the mass when stirring out in water, which addition has great faculty of absorbing water, and on account of this consequently has a relatively large water capacity, which delays and regulates the drying. The wet mass produced in this way is molded and then dried, and this can be done by casting it directly into the containers intended for receiving the acetylene gas, so that it fills them completely, after which the mass is left to dry in the above-mentioned containers, whereby any spaces between the mass and the walls of the containers are avoided. The mass produced in this way is only suitable for receiving the acetylene in the form of gas, but not suitable for receiving acetylene dissolved in acetone, because the power of the acetone to dissolve acetylene is diminished when it comes in contact with lime or cement, and besides this it reacts chemically on these substances."

Frank, at an earlier date (his American patent, No. 287,817, issued November 6, 1883), treated of the subject more generally. While Frank does not anticipate Dalen's discovery, his discussion is instructive to the chemist, who was confronted with the problem with which we deal. It affords an interesting background from which we may approach the discoveries and disclosures of Fouche and Dalen. In the light of the art as disclosed by the above quotation, Dalen merely attempted, to quote his own language: "To avoid the disadvantages of prior compositions for the purpose specified, and to produce a pasty mass which can be introduced through a small opening in the gas receptacle."

9 F.(2d)—50

Appreciating the requirements of the statute (R. S. § 4888 [Comp. St. § 9432]) the Patent Office ruled that the disclosure was insufficient. It said: "The description of the specification is insufficient in that it fails to describe the pasty mass. From the character of claim 1 it would seem to consist of a ceramic material such as is used by potters in the manufacture of earthenware, while claims 2 and 3 would include the silicious earth, and in addition claim 3 the zinc oxide. This seems to be the pasty mass described on page 1, to which applicant takes exception. If it is applicant's intention to combine with this pasty mass the fibers of elastic or plastic materials such as asbestos, it should be specifically stated and the proportions approximately given."

Responding to the ruling of the Patent Office, Dalen replied:

"In response to the Office action of May 16, 1908, the above-entitled application is hereby amended as follows: * * * 'The present invention has for its object to avoid the disadvantages of prior compositions for the purpose specified, and to produce a pasty mass which can be introduced through a small opening in the gas receptacle, and which will be thoroughly satisfactory in use. My invention consists broadly in incorporating fibers of elastic or plastic material, such as asbestos or the like, in pasty ceramic material in such proportions that the resulting mass will be of a tough fibrous consistency. The following ingredients, mixed in the proportions specified, yield a composition which is well adapted to serve the purposes of the invention:

| | |
|---|---|
| Clay | 20 grams |
| Silicious earth | 10 grams |
| Charcoal | 10 grams |

"Cls.

| | |
|---|---|
| Zinc oxide | 5 grams |
| Zinc chloride | 5 grams |
| Asbestos fiber | 5 grams' "|

Upon the amended specification the patent was issued.

[1] Appellant now admits that it never used the formula thus set forth by Dalen in response to the demands of the Patent Office and upon which disclosure the patent was issued. Moreover, it never used clay at all, which in its formula consisted of nearly 40 per cent. of the entire mass, and further admitted that it "did not consider clay as suitable for anything of that kind."

Experiments made with this material and in the proportions designated in this formula, the results of which were related on the trial, disclosed the futility of using this material

successfully in this particular compound. This, we think, alone must defeat the patent.

The statute (R. S. § 4888) provides that the applicant "shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains * * * to make, construct, compound, and use the same." The necessity of complying with the provisions of this statute is well illustrated by the facts in the instant suit. Appellee is dealing with a highly dangerous explosive. Its ignorant or careless use by one uneducated in the art might and probably would result in great loss of life or property.

Doubtless the statute was enacted that the public might understand how to make the patented article after the patent expired, and also how to avoid infringement during the life of the monopoly. But we think there exists an added reason for a strict adherence to the rule when it appears that the article protected is an explosive.

### Patent No. 1,140,124.

[2] The patent here under consideration relates to the storage of acetylene gas dissolved in acetone. One claim will be sufficient to ascertain its limitations as well as the elements of the compound. Claim 1 reads as follows:

"A porous mass for storing acetylene dissolved in acetone containing *hydraulic cement which does not contain free oxides.*"

Appellant was here stressing the second element of its combination "hydraulic cement which does not contain free oxides." In other words, Dalen had found through many experiments, so he says, that:

"Lime is not capable of being employed when storing acetylene gas dissolved in acetone. * * * But experiments made by the applicant show, nevertheless, that cement can with advantage be used for the purpose, provided that it does not contain any free oxide, such as, for instance, free alkaline earths. The said experiments have shown that it is the free oxides or free alkaline earths which affect the acetone and diminish its capacity of dissolving the acetylene gas, so that lime alone is not capable of being employed under any circumstances for the said purpose. The present invention has for object to provide a porous mass suitable for storing acetylene dissolved in acetone, employing cement as an adhesive or binding substance."

Appellee used Portland cement, but it also used kieselguhr, which it is contended neutralized or limited the free oxides in the cement. Appellant, therefore, states the narrow issue as follows:

"Plaintiff's position as to claim 1 is that, where the claim says 'containing a hydraulic cement which does not contain free oxide,' it means the condition of affairs in the 'porous mass' (the first words of the claim), and that it does not matter whether that freedom from oxides was due to the fact that in the first instance and before mixture, the cement was free from oxide, or due to the fact that after the mixture any free oxides in the cement were neutralized by the silicious material in the kieselguhr."

It is, we think, sufficient, in view of Dalen's action in the Patent Office, to hold him to the letter of his grant; for, after an adverse ruling in the Patent Office, he became more specific in the description of his cement. He inserted the adjective "hydraulic." This amendment was inserted after the examiner had cited Kaiser's patent No. 980,158. Kaiser in 1910 had obtained a patent on an acetylene gas container. As his filler he used "plaster of paris," which he defined as including "Keene cement, or * * * other plasters which are simply slight variations of plaster of paris." After the Patent Office ruling the specifications and claims were amended to read as heretofore quoted.

It would require us to unduly stretch the claim to say that Dalen meant, by the language "hydraulic cement which does not contain free oxides," to include a cement which contains free oxides *and a neutralizing element* such as kieselguhr. Both the language of the claim and the action of Dalen in the Patent Office prevent such a construction. Moreover, Fouche, not Dalen, told appellee to use kieselguhr, and told one trained in this art why the silicious material in kieselguhr was needed. Perhaps Fouche did not fully appreciate just what influence the kieselguhr had on the free lime. It is not unlikely that its influence, when introduced as appellee inserts it, is not as great as appellant contends. But the fact remains that Fouche discovered and used the element which appellee uses. Following Fouche (whether accepting all his theory or not), appellant could not be infringing the patent in suit. Or, worded differently, the claims of the patent in suit cannot be construed so as to bar one from following the teachings of a prior patent.

Claim 2 of this patent is more specific, but, to be upheld, it must be distinguished from Fouche's. Whether it can be narrowly limited, and distinguished from Fouche's or

not, we need not determine, for, if it be so restricted, it is not infringed. Nor can we say that the cement which appellee used was devoid of free oxides. It used ordinary Portland cement. If Portland cement, or other high-grade cement, was free of lime, why this stress of a "hydraulic cement which does not contain free oxides" before the Patent Office? With Kaiser using plaster of paris or Keene cement, the language used by patentee to define his filler becomes significant. Can these words be used to support a successful appeal to the Patent Office, only to be ignored when contesting with an alleged infringer?

Appellant well asks: What is hydraulic cement? When can it be said to be devoid of free oxides? The testimony amply warrants a finding that chemistry does not disclose a method of ascertaining the percentage of free oxides. It may be true that the tests showed that Portland cement was low in free oxide, but it also appears that Keene cement is a hydraulic cement, and has more lime than Portland cement. Yet Kaiser named Keene's lime five years before the issuance of the patent in suit.

We conclude, therefore, that, whatever may be the limitations of this Dalen patent, it cannot be extended beyond the boundaries fixed by its own plain language, that appellee followed Fouche, and that kieselguhr, included in this appellee's compound, if it did incidentally affect the nature of the compound and act as a neutralizer of the free oxides in the cement, was nevertheless disclosed by Fouche; that a cement that contained "free oxides," taken with a neutralizer like kieselguhr, is not the equivalent of "hydraulic cement which does not contain free oxides."

The decree is affirmed.